Nettie P. CLEMENT, Plaintiff in Error,

v.

Frances P. FERGUSON et al., Defendants in Error.

No. 36445.

Supreme Court of Oklahoma.

March 29, 1955.

Rehearing Denied May 10, 1955.

Application for Leave to File Second Petition for Rehearing Denied June 7, 1955.

H. A. Ledbetter, Ardmore, for plaintiff in error.

Ezra Dyer, Dyer & Dyer, Riddle & Riddle, and Otey, Johnson & Evans, Ardmore, for defendants in error.

BLACKBIRD, Justice.

This is an action, commenced by plaintiff in error, as plaintiff, for the partition of five separate tracts of land in Carter County, in which she owned various undivided fractional interests, along with defendants in error, who were named defendants in the action. All parties will hereinafter be referred to as they appeared in the trial court.

In their answer to plaintiff's petition, the defendants, Frances P. Ferguson, and others unnecessary to mention, joined in the general prayer of plaintiff's petition that the tracts be partitioned; and on June 17, 1953, there was entered in said proceedings an order for partition (as contemplated by our partition statutes, 12 O.S.1951 § 1501 et seq.), though, by the journal entry thereof, it was denominated a "Judgment". Included therein was the appointment of three commissioners to determine if the property could be partitioned in kind, and, the direction that if not, the property be appraised. The January, 1953, Term of said court expired without said commissioners having acted and a new group was thereafter appointed in September. Finally, in October of that year, the new commissioners filed their report containing their finding that the five tracts could not be partitioned in kind, and their appraisals of the mineral and surface rights separately in the various tracts. Within ten days after the filing of the report (as now prescribed by statute, Chap. 28, sec. 1, Okl.Sess.Laws 1953, 12 O.S.Supp. § 1512) the defendant Frances P. Ferguson filed one separate election to take tracts 2–5, both inclusive, and another, in conjunction with some of the other defendants, to take tract 1. The filing of these elections by defendants was followed by the filing of plaintiff's election, in which she elected to take only the mineral rights in tracts 1–4, inclusive, and both the surface and mineral rights in tract 5, and elected to accept the appraised value for her interests in the surface rights in tracts 1–4, inclusive. To her election she added a prayer that the court make an order directing the sheriff to sell "the oil and gas rights" in tracts 1–4, both inclusive, and both the surface and mineral rights in tract 5; and further prayed for an order directing the defendants to pay her the appraised value for her interests in the surface rights of tracts 1–4, both inclusive.

Thereafter, the defendant Frances P. Ferguson filed in the proceedings a motion (on grounds not here necessary to mention) asking the court to modify its previous "Decree" or order for partition so as to deny partition of the mineral interests in the five tracts. Plaintiff then moved to strike this motion on the ground (among others) that the court was then without jurisdiction to modify its said previous order upon defendants' motion filed after the end of the term in which the order was entered.

After a trial and hearing of the two parties' motions, whereat both parties introduced testimony and other evidence in support of their respective positions, plaintiff's motion to strike was overruled and judgment was entered denying partition of the mineral interests in the five tracts, and vacating the "Decree" of June 17, 1953, directing partition of such interests, all in accord with written findings of fact and conclusions of law filed by the court. It was further decreed that the defendant Frances P. Ferguson should have (in accord with the parties' previous elections) plaintiff's surface interests in tracts 2, 3, and 4; that

she and the other defendants who had elected to take it, should have plaintiff's surface interest in tract 1; and directed the Sheriff to execute and deliver to said defendants deeds to carry out said decree, upon said defendants' respective payments to plaintiff of the appraised value of her said surface interests. As to the surface rights in tract 5, the sheriff was ordered to sell them at public auction, as they could not be partitioned, and both plaintiff and defendants had elected to take them. In connection with this judgment, the court, upon plaintiff's attorney's request that it fix his attorney's fees to be paid, and, defendants' objection to any part thereof being taxed against them, concluded that each party to the action should be responsible to his or her own attorney for such fees, and ordered that none of such fees be taxed as costs or any part of one party's attorney's fees be charged against any other party to the action.

After the overruling of her motion and amended motion for a new trial, plaintiff lodged the present appeal. It is directed principally at the action of the trial court in setting aside and superseding with its final judgment, the "Judgment" or Order For Partition of June 17, 1953.

■ Under Proposition 2 in her briefs, plaintiff urges that the latter was a "final" judgment, and, under this court's previous interpretations and applications of 12 O.S. 1951 § 1031, could only be vacated or modified upon a motion filed in the same, or January, 1953, court term in which it was entered. In this connection see cases cited under Note 7, 12 O.S.A. § 1031, subd. 1. Defendants maintain that said so-called "Judgment" was no more than an interlocutory decree or order whose vacation might be sought after the term (as well as within the term) and to which the limitation cited is not applicable. As authority therefor, they cite Montoya v. Unknown Heirs of Vigil, 16 N.M. 349, 120 P. 676, and Hamlin v. Hamlin, 90 Wash. 467, 156 P. 393. This question has never previously been before this court, though we have held that an order confirming the report of commissioners in a partition proceeding becomes final after the term in which it is entered and then cannot be vacated. See Baker v. Vadder, 83 Okl. 140, 200 P. 994. As to whether such rule applies to such a judgment referred to in our statute prescribing it, 12 O.S.1951 § 1505, as an "Order", there is a recognized diversity of opinion. However, we think the weight of authority in jurisdictions having statutes no different from ours in respects material to the instant question, sustains the view urged by defendants. See Vaught v. Vaught, 296 Ky. 754, 178 S.W.2d 590; Swank v. Wilson, 80 Ohio App. 58, 74 N.E.2d 773; Salyer v. Arnett, Ky., 62 S.W. 1031; Camp Phosphate Co. v. Anderson, 48 Fla. 226, 37 So. 722; Tilton v. Vail, 117 N.Y. 520, 23 N.E. 120; Gilleylen v. Martin, 73 Miss. 695, 19 So. 482; Murray v. Yates, 73 Mo. 13; 40 Am.Jur., "Appeal and Error", sec. 145; Freeman on Judgments, 5th Ed., Vol. 1, sec. 41. In Salyer v. Arnett, supra [62 S.W. 1033], the order involved was one of a Kentucky county court, but the question there considered was the same as the one here. There the court said:

"In Bondurant v. Apperson, 61 Ky. 30, the rule is laid down that a judgment is not final that cannot be enforced to the extent of giving the final relief contemplated by it without further action by the court. This rule is sustained by the great weight of authority (Freem., Judgm., 30), and under it the order in question must be regarded as interlocutory, for plainly it gave no final relief to the parties, and contemplated further action by the court on the coming in of the commissioners' report."

A reading of our statutes on partition (especially sec. 1505–1511, both inclusive, of Tit. 12, supra) clearly shows the same contemplation described in the above quotation; and substantially the same test of the finality of orders or judgments is applied in this jurisdiction as is there cited. See 12 O.S.1951 § 953, and Arthur v. Arthur, Okl., 258 P.2d 1191, and the cases therein cited. While we recognize that the statutes of some states have specifically denominated the order for partition an "interlocutory" one, see, for instance, Tilton v. Vail, supra; N.Y.Code of Civil Procedure, 1894, Banks & Bros. Ed., sec. 1546, we also know that at common law such orders were deemed interlocutory and there is nothing

in our partition statutes that has effected a change in that character. In fact, our statute prescribing the "Judgment on partition", 12 O.S.1951 § 1511, in describing it as a "judgment that such partition *be and remain firm and effectual forever*" uses substantially the same terms that were used to describe such judgment at common law. See the early Missouri case of Gudgell v. Mead, 8 Mo. 53, 40 Am.Dec. 120 (quoted in Gilleylen v. Martin, supra) decided in 1843, many years before the Missouri statutes ever specifically recognized, by use of the word "interlocutory", a distinction between the preliminary judgment, or order, for partition, and the final judgment of partition. See Chap. 119, R.S.Mo.1855, and the discussion of the Missouri appeals Act of 1891, p. 70, now V.A.M.S. § 512.020, in Ess v. Griffith, 128 Mo. 50, 60, 30 S.W. 343. See also Aull v. Day, 133 Mo. 337, 34 S.W. 578, in which it was held that where the judgment ordering partition is interlocutory only, it "may be modified or rescinded at any time before final judgment, even after the expiration of the term at which it was rendered." Our partition statutes' reference to the "Judgment on partition" in the same terms of finality that such judgments possessed under the common law is a strong indication, we believe, that the "Order for Partition" likewise was intended to retain its original character, i. e., that of a purely preliminary and interlocutory order. And, we see no reason for not applying to the same question presented here, views similar to those announced in the above-cited cases. However, as said in Camp Phosphate Co. v. Anderson, supra [48 Fla. 226, 37 So. 725]: "We do not commit ourselves to all that is said in the opinions just cited, nor are we prepared to adopt or approve all of their reasoning." We say this because we do not wish, by this decision, to be interpreted as holding that an order for partition, or denying partition, may never, in any case, be regarded as a final or appealable order (a matter that Missouri has taken care of by its 1891 statute, supra, a portion of which specifically provided for an appeal from "any *interlocutory* judgment in actions of partition *which determine the rights of the parties* * * *"). In this connection, see Bates v. Hanks, 262 Ky. 556, 90 S.W.2d 743; Brown v. Crossmann,

204 N.Y. 238, 97 N.E. 526; Jackson v. Myers, 120 Ind. 504, 22 N.E. 90, 23 N.E. 86, and 12 O.S.1951 § 953, with reference to "an order affecting a substantial right * * * (which) * * * determines the action and prevents a judgment, * * *". But the order here in controversy was not such an order. It affirmatively exercised the court's power to order partition invoked by plaintiff's petition; but it affected no substantial right of any of the parties to the action. Though, in a purely formal way, it did purport to quiet their title and declare their interests among themselves, it purported to make no change in said interests as they existed before the action, and about which there was no issue in the proceedings.

■ Under her Proposition 1, plaintiff argues that the "partition judgment of June 17, 1953" was binding upon defendants, because it was "agreed to by all" of them and urges that it therefore has the binding effect of "agreed", "compromise", and/or "consent" judgments, citing Greeson v. Greeson, 208 Okl. 457, 257 P.2d 276; Insurance Service Co. v. Finegan, 196 Okl. 441, 165 P.2d 620; Grayson v. Pure Oil Co., 189 Okl. 550, 118 P.2d 644; Cobb v. Killingsworth, 77 Okl. 186, 187 P. 477; Nashville, Chattanooga & St. Louis Ry. Co. v. U. S., 113 U.S. 261, 5 S.Ct. 460, 28 L.Ed. 971; 34 C.J., pp. 132–133, §§ 333, 337. We find nothing in the record sufficient to render the partition order an "agreed" or "consent" judgment, and subject it to the cited rule for such judgments. While it is true that the journal entry of the order bears the abbreviations "O.K.", with the signatures of the attorneys for the respective parties endorsed beneath them, this, of course, is not a sufficient showing to support that assertion. See Bank of Gauley v. Osenton, 92 W.Va. 1, 114 S.E. 435, 437, wherein the journal entry bore the same kind of endorsement and the court said: "The only safe rule is to hold that whether a judgment is one obtained by consent of the parties must appear from the face of the record." There is no court reporter's or stenographer's transcript of any hearing at which this order or judgment was rendered, and nothing in the record to indicate any agreement or compromise between the parties, except in so far as such a thing may

be gleaned or fabricated from their pleadings. A comparison of the parties' pleadings reflects no such agreement or compromise. True, the answer filed by Frances P. Ferguson and three other defendants reveals their desire to have the interests of the defendants separated or partitioned from those of the plaintiff, but it contains no prayer that defendants' interests be partitioned severally, or that the mineral rights be partitioned separately from the surface rights, or appraised that way, as the "Judgment" of June 17, 1953, directed as to all of the tracts except tract 1. Thus it appears that said judgment does not purport to be a culmination or effectuation of any agreement of the parties, but contains what appears to have been independent findings of fact, conclusions of law, and orders by the court or judge himself. "A judgment by consent is to be distinguished from one rendered on an adjudication actually made by the court after due consideration and investigation * * *". 49 C.J.S., Judgments, § 173. In Aull v. Day, supra, it was held that the fact that an answer admitted the allegations of the petition, did not render a decree in accordance with the plaintiff's legal conclusions, one by consent or confession; and the court said:

> "It is true, as a general rule, that no appeal can be taken by either party from a judgment by confession, since the error, if any, is his own, and not that of the court. But this was not such a judgment. The facts stated in the petition were not disputed by the answer of the defendants, but the legal conclusions were drawn therefrom by the court. The judgment so recites."

For the foregoing reasons we have determined that the order or "Judgment" of June 17, 1953, cannot herein be considered an "agreed" or "consent" judgment; that the argument and authorities set forth under plaintiff's first proposition are inapplicable; and that the trial court did not exceed its jurisdiction in modifying the partition order of June 17, 1953, after the term in which it was entered.

 Plaintiff's argument under Proposition 4 of her brief is to the effect that after the Commissioners had made their report, defendants, not having made any

objections or taken any exceptions thereto within ten days thereafter, and plaintiff having filed her "Motion To Conform" the Commissioners' report, it was error for the trial court to refuse such confirmation. An examination of the record reveals that plaintiff filed no separate motion to confirm the Commissioners' report until December 7, 1953, many days after the court had undertaken the trial of the question of whether or not the "Judgment" of June 17, 1953, should be modified or vacated. However, as we have mentioned, the instrument denominated plaintiff's "Election To Take Property At Appraisement" contained a prayer for an order directing the sheriff to sell the oil and gas rights in and under tracts 1–4, inclusive, and the entire fee in tract 5, and for an order directing Frances P. Ferguson (in accord with her election) to pay her the appraised value of the surface rights to tracts 2, 3, and 4, and directing that the defendants (generally or jointly, in accord with their election) pay her the appraised value of the surface rights to tract 1. Plaintiff's filing of this election to take the same mineral interests she had elected to take and the motion for the sales and transfers above-described was apparently a turn of events the defendant Frances P. Ferguson had not anticipated and could not accede to. Plaintiff seems to be of the opinion that when these things occurred, the trial court could correctly do nothing but order the sale made and transfers to be accomplished that plaintiff prayed for. We do not agree. As pointed out in Williams v. Skinner, 195 Okl. 321, 157 P.2d 181, the court has the power, under 12 O.S.1951 § 1516, to make any order not inconsistent with secs. 1501–1516 of said Title. And, in Hayes v. Arch, 183 Okl. 23, 79 P.2d 603, 605, it was said there is no statutory inhibition against the withdrawal of an election in a partition proceeding "when same is made before tender of deed." There, in looking to other sales for analogy on the question involved therein, we noted that ordinarily a judicial sale is not complete until confirmation. But one of the questions posed by plaintiff's argument is whether Chap. 28, sec. 1, Okl.Sess.Laws, 1953, amending sec. 1512 of Tit. 12 O.S.1951, to provide that elections be filed within ten

days of the filing of the commissioners'' report, or within some extension of that period by the court, changes the above-described rule and has the effect of requiring *withdrawal* of such elections to be filed within the same period. In the absence of any specific wording to that effect, we do not think that Chap. 28, sec. 1, supra, can be so interpreted, especially where, as here, the withdrawal is made before the court has in any manner considered the commissioners' report or made any order pursuant thereto determining how the partition shall be accomplished, if at all, or that a transfer of interests or public sale thereof shall be had. We think that the practical effect of the motion of the defendant Frances P. Ferguson to modify the court's partition order of June 17, 1953, wherein she objected to a partition and/or sale of the mineral rights in the tracts involved, was to withdraw or abandon her previous election to take insofar as it applied to any such interests. When so viewed, there was then on file only one election to take such interests (rather than two or more " * * * in opposition to each other * * * ") and thus there existed neither of the situations described in Tit. 12 O.S.1951 § 1513, upon the occurrence of which the court "shall make an order directing the sheriff * * * to sell the same * * * ". Of course, plaintiff's election to take was never withdrawn, but the provision of sec. 1512, supra, as amended, that where *one* or more of the parties elect to take, " * * * the court *may* direct the sheriff to make a deed to the party * * * " (Emphasis ours.) is obviously, by its plain wording, permissive, rather than mandatory, and vests in the court discretionary powers as to giving such direction. In this connection, and as to related matters, see Hargis v. Hargis, 181 Okl. 377, 73 P.2d 1129. In accord with these views, we find no support for plaintiff's contention.

Plaintiff's Proposition 3 (the last to consider) is as follows: "In a partition proceeding, where partition is ordered, it is error for the trial court to refuse plaintiff attorney's fees and costs." This has reference to the order the trial judge entered in connection with the judgment appealed from, wherein he denied plaintiff's attorney's request that he be allowed an attorney fee to be taxed or charged as costs against the various parties to the action. The order was based upon the court's findings that:

"* * * * the proceedings have been adversary throughout and all attorneys herein have been actively engaged in the preparation of papers and proceedings in this cause and that the burden of the work has not fallen on plaintiff's attorney and that it would be inequitable and unjust to allow the attorney for the plaintiff any fees to be taxed as against the defendants in this action or to fix any fees for any attorney chargeable against any party other than the client of such attorney."

No portion of the record, nor authority, is cited in support of plaintiff's position, except sec. 1515 of our partition statutes, Tit. 12, supra, § 1501 et seq., which provides:

"The court making partition shall tax the costs, attorney's fees and expenses which may accrue in the action, and apportion the same among the parties, according to their respective interests, and may award execution therefor, as in other cases."

We think the court's order with reference to the attorneys' fees was error, in view of the fact that a portion of the property had been ordered sold and such sale had not yet occurred. Aside from the consideration that any attempted fixing of the attorneys' fees at that stage in the proceedings might have been difficult or premature, in that their further services would presumably be necessary to properly conducting such sale, and obtaining its confirmation, and the proper conveyancing of the subject thereof to the successful bidder and purchaser, if any, the attorneys' fees properly due, or to become due, or a portion thereof, should have been ordered taxed as costs against the proceeds of the impending sale. This is in accord with the interpretation given the above-quoted statute before it was adopted by our State from Kansas. See Sarbach v. Newell, 35 Kan. 180, 10 P. 529, 532, wherein it was said:

"The costs, attorney's fees, and expenses should first be paid out of the

entire proceeds of the sale of the property, and then the parties should receive their respective shares out of the remainder of the proceeds."

As we consider that interpretation binding on this Court, Knox v. McMillan, Okl., 272 P.2d. 1040, and other cases cited in 13 Okl.Digest, Statutes, we can but conclude that the trial court's judgment, insofar as it purported to determine the manner in which the attorneys' fees should be paid, was error. That order, or portion of the judgment appealed from, is therefore reversed. In all other respects, said judgment is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, HALLEY and JACKSON, JJ., concur.